IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VINCENT WISE,<br><br>*Plaintiff,*<br><br>v.<br><br>BIOWISH TECHNOLOGIES, INC, a Delaware corporation; BIOWISH TECHNOLOGIES INTERNATIONAL, INC. a Delaware corporation; BIG I INVESTMENTS, LLC, a Delaware limited liability company; MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C., a Massachusetts professional corporation; JUVENTA TECHNOLOGIES, INC., a Delaware corporation; JUVENTA TECHNOLOGIES HOLDINGS, INC.; a Delaware corporation; IAN EDWARDS, an individual; IRWIN HELLER, an individual; NABIL SAKKAB, an individual; ROD VAUTIER, an individual; MARK MCGRATH, an individual; JEFFREY MCCORMICK, an individual; GEOFF ROSENHAIN, an individual.<br><br>*Defendants.* | Civ. No. 18-676-RGA |

**MEMORANDUM**

Plaintiff Vincent Wise is a purported stockholder of Biowish Technologies, Inc., Biowish Technologies International, Inc., Juventa Technologies, Inc., and Juventa Technologies Holdings, Inc. Plaintiff has sued those corporate entities, their directors, their outside counsel, and at least one of their investors (collectively, the "Defendants") after a transaction in which the Juventa entities sold all or substantially all of their assets to the Biowish entities. Individual defendants

1

Ian Edwards, Nabil Sakkab, and Jeffrey McCormick serve on the board of directors for the Biowish entities. (D.I. 1 at ¶¶ 10, 12, 15). Individual defendants Irwin Heller, Rod Vautier, and Mark McGrath serve on the board of directors for the Juventa entities. (*Id.* at ¶¶ 11, 13, 14). Heller is also a partner at the law firm of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., which provided legal services to the Biowish and Juventa entities. (*Id.* at ¶ 11). Individual defendant Geoff Rosenhain serves on the board for both the Biowish and Juventa entities. (*Id.* at ¶ 16). Finally, Big I Investments is a stockholder in the Biowish and Juventa entities and is owned 50/50 by Edwards and Heller.[1] (*Id.* at ¶ 8).

Plaintiff asserts seven counts against different groups of Defendants for breaches of fiduciary duty, legal malpractice, and securities fraud. Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 28). The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.[2] For the reasons stated below, Defendants' motion to dismiss is granted.

## I. BACKGROUND

In 2007, Plaintiff co-founded Biowish Technologies Pty Ltd., an Australian company and the predecessor to the Delaware corporations Biowish Technologies, Inc. (formed in 2009) and Biowish Technologies International, Inc. (formed in 2012). (D.I. 1 at ¶ 21). Plaintiff does not know the precise relationship between these two Delaware corporations and, therefore, refers to them collectively and without distinction as "Biowish." (*Id.* at ¶ 4). Plaintiff held stock in Biowish and served as its Executive Chairman. (*Id.* at ¶¶ 4, 23). Over time, Plaintiff's percentage interest

---

[1] The complaint does not allege that Big I Investments is a controlling stockholder.

[2] The only federal claim is one of securities fraud against Defendants Heller and Edwards.

2

in Biowish was reduced following capital investments by Big I Investments, Sakkab, McGrath, and Rosenhain. (*Id.* at ¶¶ 24-25). In 2012, Plaintiff resigned from the Biowish board of directors, but he remained a stockholder of the company. (*Id.* at ¶ 50.)

In February 2012, Biowish's board of directors created two Delaware corporations, Juventa Technologies, Inc. and Juventa Technologies Holdings, Inc., to develop and commercialize Biowish's technology and intellectual property. (*Id.* at ¶ 51). Plaintiff does not know the precise relationship between the two Juventa entities and, therefore, refers to them collectively as "Juventa." (*Id.* at ¶ 7). Plaintiff is a stockholder of Juventa and served on its board of directors until his resignation sometime in 2013. (*Id.* at ¶¶ 7, 52, 80). Some time after Juventa's formation, Biowish and Juventa entered into a license agreement, which was prepared by the law firm Mintz Levin. (*Id.* at ¶¶ 58- 59; D.I. 1-1). Under the terms of the license agreement, Juventa received an exclusive license to commercialize certain Biowish technology and intellectual property. (D.I. 1 at ¶ 58). In exchange, Juventa agreed to pay a royalty based on the annual net sales of each product. (*Id.* at ¶ 64).

The complaint alleges that Juventa "suffered from cash-flow problems typical of a start-up company." (*Id.* at ¶ 88). In March 2015, Biowish informed Juventa that it was in default of the licensing agreement, because it had failed to pay certain royalties and failed to repay a $60,000 loan. (*Id.* at ¶¶ 90-96). Biowish further informed Juventa that unless the default was cured by April 17, 2015, it would terminate the license agreement. (D.I. 29-1 at p. 4 of 51). Plaintiff alleges that at an April 17, 2015 meeting of the Juventa board of directors, the CEO of Juventa, Stan Weiss, presented the terms of a potential $1 million investment in Juventa by a "group of investors." (*Id.* at ¶ 101). The complaint does not identify the group of investors or describe any proposed terms beyond the amount. (*Id.*). According to the complaint, Heller cut off the

3

conversation regarding the potential investment to instead propose that the company resolve its dispute with Biowish by entering into a "contribution agreement." (D.I. 1 at ¶¶ 103-106). Like the license agreement, the contribution agreement was prepared by Mintz Levin. (*Id.* at ¶ 107). Under the terms of the contribution agreement, Juventa would transfer to Biowish all rights and causes of action under the license agreement as well as all rights, title, and interest in all trademarks. (*Id.* ¶ 106; D.I. 29-1 at p. 9 of 51). In return, Biowish would assume certain liabilities of Juventa and, further, issue shares of Biowish stock to certain Juventa shareholders. (D.I. 1 at ¶ 126; D.I. 29-1 at p. 4 of 51). The Juventa board approved the contribution agreement that same day. (D.I. 1 at ¶ 109).

The next month, the Juventa board sought stockholder approval of the contribution agreement.[3] Accordingly, on May 6, 2015, the company sent stockholders, including Plaintiff, a letter explaining the transaction and requesting that stockholders provide written consent. (D.I. 29-1). The letter stated that Juventa was seeking the consent of: (i) a majority of all outstanding Juventa common stock, (ii) a majority of Juventa common stock not receiving Biowish shares in this transaction, and (iii) a majority of the Juventa common stock subject to restricted stock agreements. (*Id.*). Attached to the letter was a copy of the contribution agreement and a stockholder written consent form. (*Id.*).

Sometime that same month, defendants Edwards and Heller contacted Plaintiff and "explained that Juventa was struggling financially and that Juventa and Biowish faced potential

---

[3] Section 122(4) of the Delaware General Corporation Law ("DGCL") empowers a board of directors to sell all or substantially all of a corporation's property and assets. 8 *Del. C.* § 122(4). Section 271(a) of the DGCL requires that such a sale receive consent "by the holders of a majority of the outstanding stock of the corporation entitled to vote thereon." 8 *Del. C.* § 271(a).

4

legal liability from [a Juventa investor] stemming from his recent investment." (D.I. 1 at ¶ 120). According to the complaint, Heller also told Plaintiff that "if [he] did not sign the [contribution agreement], he stood to lose the entirety of his interest in both Juventa and Biowish and could face additional legal liability." (*Id.* at ¶ 122). During that conversation, "[n]either Heller nor Edwards ever informed [Plaintiff] about the potential for other outside investment in Juventa." (*Id.* at ¶ 123). In reliance on Heller's advice, Plaintiff provided his written consent.[4] (*Id.* at ¶ 131).

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive the motion to dismiss, the complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Twombly*, 550 U.S. at 555. In assessing the plausibility of a claim, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). The court's review is limited to the allegations in the complaint, exhibits attached to the complaint, documents incorporated by reference, items subject to judicial notice, and matters of the public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

---

[4] The complaint actually alleges that Plaintiff "executed the Contribution Agreement" (*see* D.I. 1 at ¶ 131), but because only the corporate entities are parties to that agreement, Plaintiff presumably means he provided his written consent as a stockholder.

## III. DISCUSSION

Defendants have raised multiple arguments as to why each of the seven counts in the complaint should be dismissed. Nevertheless, I will primarily focus only on those arguments necessary to show why the complaint fails to state a claim. Specifically, Counts I and II, for breach of fiduciary duties, are dismissed pursuant to Fed. R. Civ. P. 23.1(b)(3) for failure to plead demand futility. Counts III, IV, and V, based on a purported attorney-client relationship between Plaintiff and Heller, are dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to plead facts from which the court can plausibly infer the existence of such attorney-client relationship. Counts VI and VII are dismissed pursuant to Fed. R. Civ. P. 9(b) for failure to plead fraud with particularity. Finally, I will address Defendants' argument that Counts I and VI should be dismissed pursuant to the applicable statute of limitations, so that the parties have the opportunity to address any perceived deficiencies should Plaintiff choose to file an amended complaint.

### A. Counts I & II: The Derivative Claims

Counts I and II of the complaint assert that the directors of Juventa and Biowish, respectively, breached their fiduciary duties. (D.I. 1 at ¶¶ 140-47). Defendants argue that Counts I and II should be dismissed, because Plaintiff has failed to properly plead these counts as derivative claims. (D.I. 29 at 6-9). If a stockholder-plaintiff's claim is derivative in nature, then the plaintiff must plead "with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors …; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). "If a party brings derivative claims without first making demand, and demand is not excused, those claims must be dismissed." *Albert v. Alex. Brown Mgmt. Serv., Inc.*, 2005 WL 2130607, at *13 (Del. Ch. Aug. 26, 2005). Here, Plaintiff has not alleged that he made any demand on the board of Juventa or Biowish, or that such demands would be

6

excused. Accordingly, if I agree with Defendants that Counts I and II are derivative, and not direct, then those claims must be dismissed.

Under Delaware law, whether a fiduciary duty claim is direct or derivative turns on: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). For a direct claim, "[t]he stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id.* at 1039. "Where all of a corporation's stockholders are harmed and would recover pro rata in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature." *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008).

Count I alleges that the Juventa directors breached their fiduciary duties by "placing Biowish's interests above those of Juventa, ... restraining Juventa's ability to raise capital, manufacturing a breach of License Agreement, and causing Juventa to transfer all of its assets to a Biowish subsidiary." (D.I. 1 at ¶ 142). In other words, Count I essentially alleges that the Juventa directors mismanaged or wasted corporate assets, which are harms to the company for which the company would receive the benefit of any recovery. Count I is, therefore, a derivative claim. *See Tooley*, 845 A.2d at 1037 (stating that a claim "essentially for mismanagement of corporate assets" is derivative); *see also In re Saba Software, Inc. S'holder Litig.*, 2017 WL 1201108, at *17 (Del. Ch. Mar. 31, 2017) ("[A] claim that a company impeded the pursuit of a value-maximizing transaction was a claim of mismanagement and therefore derivative" (citing *Agostino v. Hicks*, 845 A.2d 1110, 1123 (Del. Ch. 2004))); *Thornton v. Bernard Tech., Inc.*, 2009 WL 426179, at *1,

7

3 (Del. Ch. Feb. 20, 2009) (claim that the board rejected proposals and caused a breach of a licensing agreement is a derivative claim based on "quintessential director mismanagement"). As a result, Count I is dismissed pursuant to Fed. R. Civ. P. 23.1(b)(3) for failure to plead demand futility.

Count II alleges that the Biowish directors breached their fiduciary duties by "compensating favored Juventa shareholders using Biowish assets, and diluting [Plaintiff's] share of Biowish to stifle potential dissent among Juventa shareholders." (D.I. 1 at ¶ 146). Thus, Count II is based on equity dilution, another type of stockholder claim "typically viewed as derivative under Delaware law." *Feldman*, 951 A.2d at 732. An equity dilution claim may be direct if a stockholder-plaintiff can show that the claim fits within the *Gentile* exception. To do that, a plaintiff must allege facts showing that (1) a controlling stockholder caused the corporation to issue "excessive" shares of stock in exchange for assets of lesser value; and (2) the exchange caused an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the percentage of shares owned by the minority stockholders. *Gentile v. Rosette*, 906 A.2d 91, 99-100 (Del. 2006). Plaintiff, however, has not argued that the *Gentile* exception applies here. Accordingly, Count II is a derivative claim and, therefore, is dismissed pursuant to Fed. R. Civ. P. 23.1(b)(3) for failure to plead demand futility.

Counts I and II also allege that the Juventa and Biowish directors breached their fiduciary duties, respectively, by "failing to disclose critical and material information" to their respective stockholders. (D.I. 1 at ¶¶ 142, 146). "Normally, non-disclosure claims are direct claims where the defendant has failed to disclose material information he had a duty to disclose." *Koloni Reklam, Sanayi, Ticaret LTD/STI v. Viacom, Inc.*, 2017 WL 726660, at *4 (D. Del. Feb. 23, 2017). In order to adequately allege a non-disclosure claim, however, the complaint must "allege that

facts are missing from the [the company's statement to stockholders], identify those facts, state why they meet the materiality standard and how the omission caused injury." *Khanna v. McMinn*, 2006 WL 1388744, at *29 (Del. Ch. May 9, 2006); *Loudon v. Archer-Daniels-Midland Co.*, 1996 WL 74730, at *5 (Del. Ch. Feb. 20, 1996) ("To state a claim, the complaint must, at the very least, identify the specific material undisclosed facts that form the basis of the claimed violation of the directors' disclosure duty.").

At a minimum, neither Count I nor Count II identify the specific facts the board of directors failed to disclose or explains why such facts were material. In his opposition brief, Plaintiff argues that the Juventa board failed to disclose "material information about the availability of financing for Juventa, and the facts surrounding the alleged breaches of the License Agreement by Juventa." (*See* D.I. 31 at 8). Even if this sentence were sufficient to identify the missing facts, Plaintiff may not amend his complaint through his opposition brief. *Hughes v. United Parcel Serv., Inc.*, 639 F. App'x 99, 104 (3d Cir. 2016). Accordingly, Counts I and II, to the extent they state a direct claim based on non-disclosures, are dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

### B. Counts III, IV, and V: The Claims Based on an Attorney-Client Relationship

Plaintiff's third, fourth, and fifth causes of action are based on a purported attorney-client relationship between Plaintiff and Heller. Specifically, Count III asserts a claim of legal malpractice against Heller and Mintz Levin. (D.I. 1 at §§ 148-53). Count IV alleges that Heller breached a fiduciary duty owed under the attorney-client relationship. (*Id.* at §§ 154-58). Count V alleges that Mintz Levin aided and abetted Heller's breach of fiduciary duty. (*Id.* at §§ 159-66). I need not address all of the reasons Defendants argue that these claims fail. It is sufficient that

the complaint does not give rise to a reasonable inference that Plaintiff and Heller had an attorney-client relationship.

"Whether an attorney-client relationship exists depends on the facts, circumstances, and findings in a particular case." *Milner v. Anders*, 2001 WL 637394, at *4 (D. Del. May 10, 2001).[5] "Normally, the most critical fact or circumstance used to determine if an attorney-client relationship exists would be an express agreement for legal services between the parties." *Id.* "Absent an express contract, a claim of legal representation can be made by implication where, among other requirements, the attorney expressly or impliedly agreed to render such assistance and it is reasonable for the putative client to believe the attorney was representing him." *Keith v. Gibson*, 2011 WL 1527582, at *4 (D. Del. Apr. 20, 2011).

Here, there are no allegations in the complaint that Heller expressly or impliedly agreed to act as Plaintiff's counsel. The complaint does not allege the existence of any express agreement between the parties. There are also no allegations that Plaintiff asked Heller to serve as his counsel, that Heller stated that he was representing Plaintiff, that Plaintiff offered to pay for Heller's services, that Heller sent a bill, or that Heller previously or subsequently represented Plaintiff.

In addition, the facts alleged in the complaint demonstrate that it was not reasonable for Plaintiff to believe that Heller was acting as his counsel. Plaintiff's assertion that he had an attorney-client relationship with Heller is based on a single conversation between Plaintiff, Heller, and Edwards regarding stockholder consent to the contribution agreement. (D.I. 31 at 17). But

---

[5] Defendants teed up the issue as to whether Delaware or Massachusetts law governed these claims, and Plaintiff did not take a firm position on the issue. (D.I. 29 at 13 n. 5). Instead, Plaintiff agreed with Defendants that the law of both states is "similar" and, like Defendants, Plaintiff cited cases from both states. (D.I. 31 at 16, 16 n. 4, 18). Given the above context, I will apply Delaware law for the purposes of this motion.

10

that conversation was initiated by Heller and Edwards, not Plaintiff, as would be expected when a person is seeking legal advice. (D.I. 1 at ¶ 118). In addition, Edwards' presence would have destroyed any attorney-client privilege, because Edwards, as the CEO of Biowish, was an adversary in the transaction Plaintiff was being asked to consider. (D.I. 1 at ¶ 118). Because the complaint does not allege facts giving rise to a plausible inference that Heller acted as Plaintiff's counsel or that Plaintiff reasonably believed Heller was so acting, Counts III, IV, and V are dismissed without prejudice for failure to state a claim.

### C. Counts VI and VII: Securities Fraud

Counts VI and VII allege securities fraud and common law fraud, respectively, against Heller and Edwards. Fraud claims are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). *Oran v. Stafford*, 226 F.3d 275, 288 (3d Cir. 2000); *Snowstorm Acquisition Corp. v. Tecumseh Prod. Co.*, 739 F. Supp. 2d 686, 708 (D. Del. 2010). Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Put another way, Rule 9(b) requires that a plaintiff set forth "the who, what, when, where and how" of the alleged fraud. *Cal. Public Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004)).

Plaintiff's complaint fails to meet the heightened pleading standard of Rule 9(b). Counts VI and VII allege that Heller and Edwards: (i) falsely told Plaintiff that "Juventa could no longer continue as a going concern"; (ii) failed to "disclose alternatives to the Contribution Agreement"; and (iii) failed to disclose "Biowish's actions that contributed to Juventa's difficulties." (D.I. 1 at ¶¶ 168, 175). The complaint, however, does not allege when this conversation took place or how these statements were false. Plaintiff acknowledges in his pleading that Juventa faced "cash-flow problems." (*Id.* at ¶ 88). Plaintiff also fails to allege with particularity the alleged actions of

11

Biowish that "contributed to Juventa's difficulties" or any "alternatives" to the contribution agreement that should have been disclosed to him.

### D. Counts I & VI: The Statute of Limitations

Defendants seek to dismiss Count I and Count VI as barred by the applicable statute of limitations. (D.I. 29 at 9-12). As stated previously, Count I asserts a breach of fiduciary duty claim against the Juventa board of directors. Count VI asserts a securities fraud claim against Heller and Edwards. Each count is discussed in turn.

#### 1. Count I

Under Delaware law, a fiduciary duty claim is subject to a three-year statute of limitations, which begins to run "when there has been a harmful act by a defendant," regardless of whether a plaintiff is aware of the harm. 10 *Del. C.* § 8106(a); *In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007). Defendants argue that all of the conduct underlying Count I occurred on or before April 17, 2015, the date on which the Juventa board approved the contribution agreement. (D.I. 29 at 9-10). Thus, under Defendants' theory, Plaintiff's complaint, filed on May 3, 2018, is untimely. (*Id.*).

Even if Defendants are correct that a fiduciary duty claim arises on the date the terms of the transaction are fixed, i.e., on April 17, 2015, it seems that the discovery rule would suspend the running of the statute of limitations until at least May 6, 2015, the date it appears that Juventa first informed Plaintiff of the contribution agreement and its terms. Under the discovery rule there "must have been no observable or objective factors to put a party on notice of an injury, and plaintiffs must show that they were blamelessly ignorant of the act or omission and the injury." *In re Dean Witter Partnership Litig.*, 1998 WL 442456, at *5 (Del. Ch. July 17,1998). Defendants have not shown that Plaintiff had reason to know of the contribution agreement and its terms before

12

May 6, 2015, the date on which Juventa sent Plaintiff a letter seeking his stockholder consent with a copy of the Contribution Agreement attached. Because Plaintiff filed his complaint on May 3, 2018, Count I appears to be within the three-year statute of limitations.

### 2. Count VI

Count VI alleges that Heller and Edwards committed securities fraud by making false representations regarding the financial health and potential legal liability of Juventa in order to induce Plaintiff into giving stockholder consent to the contribution agreement. (D.I. 1 at ¶¶ 118-25, 168-69). A securities fraud claim is subject to a two-year statute of limitations. 28 U.S.C. § 1658. Plaintiff alleges that the fraudulent representations occurred sometime in May 2015, but Plaintiff did not file his complaint until three years later, on May 3, 2018. Accordingly, Plaintiff's complaint is untimely unless he can demonstrate that he did not know or have reason to know of the fraudulent nature of the representations before May 3, 2016. *See Pension Tr. Fund for Operating Engineers v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 272 (3d Cir. 2013) (explaining that the statute of limitations begins to run for a securities fraud claim when a plaintiff "discovered or in the exercise of reasonable diligence should have discovered" the basis for his claim against the defendants).

The difficulty with evaluating whether Plaintiff knew or should have known of the purported falsity of the statements is that Plaintiff does not explain what was false about the statements. According to the complaint, Heller and Edwards "falsely told [Plaintiff] that Juventa could no longer continue as a going concern." (D.I. 1 at ¶ 168). But there are no allegations in the complaint that Juventa was financially healthy and could continue. Indeed, the complaint itself alleges that Juventa "suffered from cash-flow problems." (*Id.* at ¶ 88). Heller and Edwards also told Plaintiff that the company faced potential legal liability if he did not consent to the contribution

13

agreement. But there are no allegations in the complaint that this was untrue and why it was untrue. The complaint also does not allege the facts Plaintiff discovered, and when, that alerted him to his securities fraud claim. Accordingly, it may be correct that Count VI is barred by the statute of limitations. But considering that Plaintiff must amend Count VI anyway to meet the pleading standards of Fed. R. Civ. P. 9(b), I need not decide the issue until Plaintiff has amended Count VI.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint (D.I. 28) is granted. The complaint is dismissed without prejudice and with leave to amend. An appropriate order will be entered.

Dated: January 11, 2019

_____
UNITED STATES DISTRICT JUDGE