IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VINCENT WISE,<br><br>*Plaintiff,*<br><br>v.<br><br>BIOWISH TECHNOLOGIES, INC, a Delaware corporation; BIOWISH TECHNOLOGIES INTERNATIONAL, INC. a Delaware corporation; BIG I INVESTMENTS, LLC, a Delaware limited liability company; MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C., a Massachusetts professional corporation; JUVENTA TECHNOLOGIES, INC., a Delaware corporation; JUVENTA TECHNOLOGIES HOLDINGS, INC.; a Delaware corporation; IAN EDWARDS, an individual; IRWIN HELLER, an individual; NABIL SAKKAB, an individual; ROD VAUTIER, an individual; MARK MCGRATH, an individual; JEFFREY MCCORMICK, an individual; GEOFF ROSENHAIN, an individual.<br><br>*Defendants.* | Civ. No. 18-676-RGA |

**MEMORANDUM OPINION**

Currently pending before the court is Defendants' motion to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 41). Plaintiff Vincent Wise is a stockholder of Biowish Technologies, Inc. and Biowish Technologies International, Inc. (collectively, "Biowish") as well as Juventa Technologies, Inc., and Juventa Technologies Holdings, Inc. (collectively, "Juventa"). Defendants are comprised of Biowish, Juventa, their directors, their

1

outside counsel, and at least one of their investors (collectively, the "Defendants"). Wise asserts that different groups of Defendants committed breaches of fiduciary duty, legal malpractice, and securities fraud in connection with a transaction whereby Juventa sold all or substantially all of its assets to Biowish. The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part.

## I. BACKGROUND

In February 2012, Biowish's board of directors created Juventa, a Delaware corporation. (D.I. 40 at ¶ 51). Thereafter, Biowish and Juventa entered into a license agreement which gave Juventa the rights to commercialize certain technology and intellectual property belonging to Biowish. (*Id.* at ¶¶ 58, 64). In exchange, Juventa was obligated to pay royalties based on the annual net sales of each product. (*Id.*). The license agreement was prepared by the law firm Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., where defendant Irwin Heller is a partner. (*Id.* at ¶¶ 11, 59). Heller and Mintz Levin served as outside counsel to both Juventa and Biowish. (*Id.* at ¶ 11). Heller also served as an officer and director of Juventa and an officer of Biowish. (*Id.*).

In March 2015, Biowish informed Juventa that Juventa was in default of the license agreement. (*Id.* at ¶¶ 91-97). If Juventa did not cure the default by April 17, 2015 by paying a certain sum of money, Biowish would terminate the license. (*Id.*; D.I. 29-1 at 4). Wise alleges that, at an April 17, 2015 meeting of the Juventa board of directors, the CEO, Stan Weiss, presented the terms of a potential investment by a group of outside investors that would have been sufficient to cure the default. (D.I. 40 at ¶¶ 102, 106). Heller, however, proposed that Juventa enter into a "contribution agreement" whereby Juventa would transfer all of its rights under the license agreement as well as any trademarks to Biowish. (*Id.* at ¶¶ 104-107, 127; D.I. 29-1 at 4, 9). In

2

return, Biowish would issue stock to certain Juventa shareholders and assume certain liabilities. (*Id.*). The board immediately took a vote and approved the idea. (D.I. 40 at ¶ 110). Like the license agreement, the contribution agreement was prepared by Mintz Levin. (*Id.* at ¶ 108).

The contribution agreement required the approval of Juventa's stockholders. *See* 8 *Del. C.* § 122(4); 8 *Del. C.* § 271(a). Accordingly, on May 6, 2015, the company sent its stockholders, including Wise, a letter explaining the transaction and requesting written consent. (D.I. 29-1). The letter stated that Juventa was seeking the consent of: (i) a majority of all outstanding Juventa common stock, (ii) a majority of Juventa common stock not receiving Biowish shares in the transaction, and (iii) a majority of the Juventa common stock subject to restricted stock agreements. (*Id.*). Attached to the letter was a copy of the contribution agreement and a stockholder written consent form. (*Id.*).

Sometime that same month, defendants Irwin Heller and Ian Edwards contacted Wise regarding the written consent form. (D.I. 40 at ¶ 121). In addition to being an officer and director of Juventa, an officer of Biowish, and outside counsel to both entities, Heller is a 50% owner of Big I Investments, which is a stockholder in both the Biowish and Juventa entities. (*Id.* at ¶¶ 8, 10-11). The other 50% owner of Big I Investments is Edwards, who also serves as an officer and director of Biowish. (*Id.*). Heller and Edwards told Wise that Juventa was struggling financially and faced potential legal liability from an investor. (D.I. 40 at ¶ 121). They also told Wise that he would lose his entire interest in both Juventa and Biowish and could face legal liability if he did not give written consent. (*Id.* at ¶ 123). Heller and Edwards did not mention any alternatives to the contribution agreement, such as the outside investment proposed by Weis. (*Id.* at ¶ 124). Accordingly, in reliance on Heller's advice, Wise provided his written consent. (*Id.* at ¶ 132).

3

## II. STANDARD OF REVIEW

To survive the motion to dismiss pursuant to Rule 12(b)(6), the complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Twombly*, 550 U.S. at 555. In assessing the plausibility of a claim, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). The court's review is limited to the allegations in the complaint, exhibits attached to the complaint, documents incorporated by reference, items subject to judicial notice, and matters of the public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. DISCUSSION

Counts I and II of the amended complaint are based on the fiduciary duties that the directors of Biowish and Juventa, respectively, owe to their corporation and its stockholders. Counts III, IV, and V are based on an attorney-client relationship between Wise and Heller. Counts VI and VII allege fraud. Each set of claims is addressed in turn.

### A. Counts I & II: The Derivative Claims

Counts I and II of the complaint assert derivative claims on behalf of Juventa and Biowish, respectively, for breaches of fiduciary duty.[1] (D.I. 40 at ¶¶ 149-66; D.I. 44 at 5). Derivative claims that do not comply with Fed. R. Civ. P. 23.1 must be dismissed. Under Rule 23.1, a stockholder

---

[1] Count I is asserted against the "Biowish Insiders" who owed fiduciary duties "[a]s officers and directors of Juventa." (D.I. 40 at ¶ 150). Thus, the claim is brought on behalf of Juventa.

4

must allege that the company wrongfully refused a demand to address an alleged wrong, or that a demand on the board would have been futile. *Allison v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1112 (D. Del.), *aff'd*, 782 F.2d 1026 (3d Cir. 1985). Wise did not make a pre-suit demand on the boards of either Juventa or Biowish, so he must show that demand is excused. "The substantive requirements of demand are a matter of state law." *Blasband v. Rales*, 971 F.2d 1034, 1047 (3d Cir. 1992). Under Delaware law, demand is excused if the complaint alleges with particularity that "a majority of the board lacks independence or is otherwise incapable of validly exercising its business judgment." *Blaustein v. Lord Balt. Capital Corp.*, 84 A.3d 954, 958 (Del. 2014).

In trying to determine if a majority of the board is independent, the court's job is to "count heads." *Cumming v. Edens*, 2018 WL 992877, at *12 (Del. Ch. Feb. 20, 2018). Wise's amended complaint has made this job more difficult by failing to provide a complete list of the current members of each board. Instead, the amended complaint states that certain defendants "were" directors "at all relevant times." (*See, e.g.*, D.I. 40 at ¶ 11). This leaves open the possibility that those defendants are no longer directors or that there are other unidentified individuals currently serving as directors.

For Count I, the amended complaint alleges that Heller, Vautier, McGrath, and Rosenhain were directors of Juventa, so I will assume that they currently comprise the entire board. (*Id.* at ¶¶ 11, 13-14, 16). Wise alleges that demand is futile as to Count 1, "because the Biowish Insiders … are not disinterested or independent." (*Id.* at ¶ 157). The "Biowish Insiders" is comprised of Vautier, Edwards, and Sakkab. (*Id.* at ¶ 81). Thus, the only overlap between the board of Juventa and the Biowish Insiders is one director—Vautier. One director is not a majority here. Accordingly, Count I is dismissed without prejudice pursuant to Rule 23.1 for failure to adequately plead demand futility.

5

For Count II, the amended complaint alleges that Edwards, Sakkab, McCormick, and Rosenhain were directors of Biowish, so I will assume that they currently comprise the entire board. (*Id.* at ¶¶ 10, 12, 15-16). These Biowish directors, along with Heller, comprise the "Biowish Control Group." (*Id.* at ¶ 159). Wise alleges that demand is futile as to Count II, because the Biowish Control Group "failed to disclose critical and material information to Wise, manufactured a breach of the License Agreement and failed to disclose to Wise the availability of financing for Juventa, and prevented Juventa's ability to raise capital and develop products." (*Id.* at ¶ 166). Thus, the amended complaint alleges that the entire Biowish board of directors was conflicted, because they participated in the alleged wrongs.

Courts have "repeatedly rejected" allegations that demand is excused because a majority of the directors "participated in and approved the alleged wrongs" and, therefore, would "have to sue themselves." *Lewis v. Fites*, 1993 WL 47842, at *3 (Del. Ch. Feb. 19, 1993); *Carauna v. Saligman*, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990). Although the mere threat of personal liability is insufficient to excuse demand, "plaintiffs are entitled to a reasonable inference of interestedness where a complaint indicates a 'substantial likelihood' of liability will be found." *In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 990 (Del. Ch. 2007).

Here, it is difficult to conclude that the Biowish directors face a "substantial likelihood" of liability for breach of a fiduciary duty when the only alleged harms in Count II were experienced by Juventa. It was Juventa that acquiesced to a "manufactured" breach of the License Agreement and surrendered all rights under the license agreement. It was Juventa shareholders that were prevented from receiving material information related to the contribution agreement. Juventa, however, is not an entity to whom the directors of Biowish normally owe fiduciary duties. Thus, Wise has failed to allege facts creating a plausible inference that the directors of Biowish face a

6

substantial likelihood of liability for breaches of fiduciary duty. Given the foregoing considerations, Wise has failed to allege that demand of the Biowish board of directors is excused. Count II is dismissed without prejudice pursuant to Rule 23.1 for failure to adequately plead demand futility.

### B. Counts III, IV, and V: The Claims Based on an Attorney-Client Relationship

Wise's third, fourth, and fifth causes of action are based on an attorney-client relationship between Wise and Heller. (D.I. 40 at ¶¶ 167-87). The court previously dismissed these claims, because the original complaint did not give rise to a reasonable inference that Wise and Heller had an attorney-client relationship. (D.I. 39). With the amended complaint, Defendants have renewed their argument that Wise and Heller did not have an attorney-client relationship. (D.I. 42 at 9). Defendants' arguments fail, however, when they ask the court to consider facts outside the pleadings and to weigh evidence, neither of which is proper on a motion to dismiss.[2]

Under Delaware law, where there is no express contract evidencing an attorney-client relationship, "courts look at the contacts between the potential client and its potential lawyers to determine whether it would have been reasonable for the 'client' to believe that the attorney was acting on its behalf as counsel." *Boston Sci. Corp. v. Johnson & Johnson Inc.*, 647 F. Supp. 2d 369, 374 (D. Del. 2009) (quoting *Benchmark Capital Partners IV, L.P. v. Vague*, 2002 WL 31057462, *3 (Del. Ch. Sep. 3, 2002)); *PharmAthene, Inc. v. SIGA Tech., Inc.*, 2009 WL 2031793, *1 (Del. Ch. July 10, 2009).

---

[2] For this reason, I am not addressing Defendants' argument that Counts III-V fail because Wise cannot prove "but for" harm. (D.I. 42 at 14). Defendants' argument that the transaction would have gone through even without Wise's consent to the contribution agreement relies on facts not before the court and facts not properly considered on a motion to dismiss.

7

Here, the amended complaint does not allege the existence of any express agreement between the parties. Instead, the amended complaint alleges that Heller engaged in a pattern and practice of giving legal advice to Wise personally that lead Wise to reasonably believe Heller was acting on his behalf as counsel during the May 2015 phone call. (D.I. 40 at ¶ 138). For example, Wise received a memo in February 2013 regarding the terms of a proposed stock transaction. (*Id.* at ¶ 136). It is from Mintz Levin and addressed solely to Wise. (D.I. 43-1). Wise also received an email in October 2015 passing along advice from Heller on another stock transaction. (D.I. 40 at ¶ 137). The email reads: "Irwin [Heller] correctly suggested you want to raise a certain amount of money" and "he has suggested there are 2 ways to go about this." (D.I. 43-2). The email goes on to provide two different options for how Wise can sell his own stock in the company so as to achieve his goals. (*Id.*). Finally, at unspecified times, "Heller had advised Wise on a number of business and personal issues, including his move to the United States, his legal dealings in Thailand, and selling personal parcels of shares." (D.I. 40 at ¶ 134). Considered together, these allegations give rise to a plausible inference that Wise had a reasonable belief that he had an attorney-client relationship with Heller.

Defendants argue that, in the February memo and the October email, Heller and Mintz Levin were acting solely as counsel for the company, not Wise. (D.I. 42 at 12, 13). But there are no express statements in the February memo that Mintz Levin is acting on behalf of someone else or at least not acting on behalf of Wise. (*Id.*). Indeed, the purpose of the memo is a bit unclear as it is responding to an email Wise sent Sakkab, which was neither described in the memo nor (properly) submitted to the court. It is also not clear from the face of the October email how this could be legal advice given solely to the company when it primarily addresses how Wise should structure the sale of his personal stock. Defendants further argue that the October memo cannot

8

be a basis for believing Heller acted as Wise's attorney in May 2015, because it post-dates the conversation. I do not read the October memo, however, as the reason Wise believed in May that Heller was acting his counsel. Rather, I read the memo as an example of how Heller, or those around him, would mix his advice to the company with advice to Wise in ways that could have created confusion as whom Heller was and was not representing.

Notably, under Rule 1.13(e) of the Delaware Rules of Professional Conduct, "[a] lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituent." Under Rule 1.13(d), however, when "dealing with an organization's directors, . . . shareholders, or other constituents, a lawyer shall explain the identity of the client when the lawyer knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing." The amended complaint alleges that Heller never told Wise in any of their interactions, including the May 2015 conversation, that he was not acting as his legal counsel.[3] (D.I. 40 at ¶¶ 129-30).

Finally, Defendants claim that no attorney-client relationship existed because the May 2015 conversation included Edwards who, as a director of Biowish, would have been a third-party to the attorney-client relationship and an adversary to Wise in the proposed transaction. (D.I. 42 at 9-10). Although I was persuaded by this fact on the motion to dismiss the original complaint, I am not here. It was curious that Edwards, of all the directors on the Biowish board, participated

---

[3] The *United States v. Hoffecker* case cited by Defendants is distinguishable for this, and other, reasons. 530 F.3d 137 (3d Cir. 2008). Specifically, the attorney (Field) and the purported client (Hoffecker) "essentially had been out of contact for approximately three years, a lapse of time that assisted Field in renewing their relationship on a basis other than that of an attorney and client." *Id.* at 152. In addition, on each occasion that they spoke after renewing the relationship, Fields "made ... clear" he was "not serving as a lawyer for as Hoffecker." *Id.* There are no allegations of a similar time lapse and disclaimer statements in the amended complaint.

9

in the call with Heller. Heller and Edwards, however, are 50/50 owners of Big I Investments, which was a stockholder in Juventa at the time of the transaction. Because Edwards and Wise were both stockholders in Juventa, an argument could be made that they shared a "common interest privilege." *See* F.R.E. 501; D.R.E. 502(d)(6). For that reason, Edwards' presence during the May 2015 conversation is not a reason to find on a motion to dismiss that Wise cannot plead the existence of an attorney-client relationship.[4] Defendants' motion to dismiss counts III, IV, and V is denied.

## C. Counts VI and VII: Fraud

Counts VI and VII allege securities fraud and common law fraud, respectively, against Heller and Edwards. Defendants argue that the amended complaint fails to plead certain elements common to both causes of action, i.e., loss causation and false representation. Defendants also argue that the securities fraud claim in particular should be dismissed as barred by the statute of limitations. Because the statute of limitations is a threshold issue, I will address it first.

### 1. Statute of Limitations

A private right of action for securities fraud "may be brought not later than the earlier of -- (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b). Under the first of these two prongs, the statute of limitations starts to run when a plaintiff discovered or in the exercise of reasonable diligence should have discovered the basis for his claim against the defendants. *See In re Merck & Co., Inc. Sec., Derivative & "ERISA"' Litig.*, 543 F.3d 150, 162 (3d Cir. 2008); *Pension Tr. Fund for Operating*

---

[4] Even if the "common interest" privilege turns out not to apply, the fact that it could arguably apply suggests that it might be reasonable for a non-lawyer such as Wise not to recognize that Heller was not acting as his lawyer because of the presence of a third person.

*Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 272 (3d Cir. 2013). "[A] defendant may raise a statute of limitations defense by a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it is apparent on the face of the complaint that the action is barred." *Singer v. Bureau of Prof'l & Occupational Affairs*, 523 F. App'x 185, 186 (3d Cir. 2013). As with motions to dismiss generally, the court is not literally limited to the face of the complaint. The court may also consider exhibits attached to the complaint, documents incorporated by reference, and items subject to judicial notice. *B.B. v. Del. College Preparatory Academy*, 2019 WL 949204, at *4 (D. Del. Feb. 27, 2019).

Count VI alleges that Heller and Edwards committed securities fraud in May 2015 by: (1) falsely telling Wise that Juventa could no longer continue as a going concern, (2) failing to disclose alternatives to the contribution agreement, hereinafter "investment alternatives," and (3) falsely telling Wise that he could face legal liability from a Juventa investor named Duchossois if he did not execute the contribution agreement. (D.I. 40 at ¶¶ 189-90). Wise alleges that he did not learn all of the facts regarding his securities fraud claim until September 2017 and, therefore, his claim filed in May 2018 is within two years of the discovery. (*Id.* at ¶ 146). Specifically, Wise only learned in September 2017 that: (1) Weiss had presented investment alternatives to the Juventa board at the April 17, 2015 meeting, and (2) Duchossois had received approximately 400,000 shares in Biowish in order to silence any potential dissent to the contribution agreement. (*Id.* at ¶¶ 102-03, 128, 143-46).

Defendants dispute the timing of Wise's discovery. (D.I. 42 at 18). The contribution agreement sent to Juventa stockholders in May 2015 included a schedule showing Duchossois would receive approximately 400,000 shares of Biowish. (D.I. 29-1). Because the contribution agreement and its schedule were incorporated into the complaint by reference, it may be considered

11

on a motion to dismiss. I find that the schedule put Wise on notice of his securities fraud claim based on Duchossois' investment. Wise argues that the discovery rule tolls the statute of limitations until such time as he knew or should have known of Defendants' state of mind, which is an essential element of a securities fraud claim. (D.I. 44 at 16 (citing *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648-49 (2010)). Although the law supports Wise's argument in theory, the amended complaint does not allege facts essential to Defendants' state of mind that Wise did not know or could not have known within the applicable statute of limitations. Accordingly, the portion of Wise's securities fraud claim based on Duchossois' investment is dismissed without prejudice pursuant to the statute of limitations.

Defendants argue that Wise knew of his securities fraud claim based on the investment alternatives as early as May 2015, when Wise and Heller exchanged emails discussing Weiss' presentation to the Juventa board. (D.I. 42 at 18; D.I. 43). These emails, however, were neither attached to the complaint nor incorporated by reference. Because Defendants have not explained how the court may take judicial notice of the emails, I will not consider them on a motion to dismiss. Without the emails, Defendants have not given any other reason to find that the statute of limitations has run on the investment alternatives portion of Wise's securities fraud claim. Accordingly, that portion of Defendants' motion to dismiss is denied.

### 2. Loss Causation

Claims for securities fraud and common law fraud require a plaintiff to plead "loss causation," or damage to the plaintiff resulting from the reliance on the false statement. *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007); *E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 461-62 (Del. 1999). According to Defendants, Wise cannot satisfy this causal element, because the contribution agreement would have been approved even if

12

Wise did not give his written consent. (D.I. 42 at 19). Defendants did not elaborate on this argument or cite to any supporting facts and authority. Defendants instead directed the court to their briefs filed in connection with the motion to dismiss the original complaint. (*Id.*).

Defendants cannot evade the page limits set forth in Del. Local Rule 7.1.3(4) by incorporating by reference arguments made in prior briefs. *See In re Tropicana Orange Juice Mktg. & Sales Prac. Litig.*, 2019 WL 2521958, at *2 n. 2 (D.N.J. June 18, 2019) (declining to analyze "old arguments" and instead limiting the analysis to the arguments set forth in the renewed motion); *cf. Lin v. Att'y Gen. of United States*, 127 F. App'x 36, 39 (3d Cir. 2005) (rejecting the practice of "incorporating by reference" arguments made in the proceedings below). Accordingly, the court will not consider Defendants' loss causation argument.

### 3. False Representation

For both fraud claims, Defendants argue that Wise has failed to plead with particularity any false representation on which he justifiably relied. (D.I. 42 at 24). Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Put another way, Rule 9(b) requires plaintiffs to set forth "the who, what, when, where and how" of the alleged fraud. *Cal. Public Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004)).

Counts VI and VII allege that Heller and Edwards committed fraud in May 2015 by falsely telling Wise that Juventa could no longer continue as a going concern. (D.I. 40 at ¶¶ 189-90, 198). The amended complaint alleges that this representation was false, because Weiss presented to the board of Juventa a potential $1 million investment from a group of investors, with $100,000 placed in escrow, and $25,000 available immediately. (*Id.* at ¶¶ 102-03, 146). The amended complaint further alleges that the potential investment would have allowed Juventa to cure the default which

precipitated the need for the contribution agreement. (*Id.* at ¶ 106). Accordingly, the amended complaint has set forth with particularity the who, what, when, where and how of the alleged fraud. Defendants motion to dismiss Counts VI and VII for failure to plead with particularity a false representation is denied.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint (D.I. 41) is granted in part and denied in part. Defendants' motion is granted as to Counts I, II, and the part of Count VI based on Duchossois' investment. These claims are dismissed without prejudice. Defendants' motion is denied as to Counts III, IV, V, VII, and the part of Count VI based on investment alternatives.

Dated: September 12, 2019

_____
UNITED STATES DISTRICT JUDGE

14